1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

THE O.N. EQUITY SALES CO.,

              Plaintiff,

     vs.

JOHN R. VENRICK,

             Defendant.

No. CV07-0735RSL

ORDER GRANTING
DEFENDANT'S MOTION TO
COMPEL ARBITRATION AND
DENYING PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION

14

## I.  INTRODUCTION

15

16

17

18

19

       This matter comes before the Court on plaintiff's motions for preliminary injunction
("Dkt. #11) and to "Consolidate Preliminary Injunction Hearing with Trial on the Merits" (Dkt.
#10) and defendant's motions to compel arbitration (Dkt. #16) and for a protective order (Dkt.
#15).  For the reasons discussed below, defendant's motion to compel arbitration is granted.
The remaining motions are denied as moot.[1]

20

## II.  FACTUAL BACKGROUND

21

22

23

24

       This case stems from claims filed with the National Association of Securities Dealers
("NASD") by defendant John Venrick against plaintiff, The O.N. Equity Sales Co.
("ONESCO"), for losses he alleges are related to the fraudulent actions of Gary Lancaster and

25

26

      [1]  Because this matter can be decided on the memoranda, declarations, and exhibits submitted by
the parties, plaintiff's request for oral argument is DENIED.

27

28

ORDER GRANTING DEFENDANT'S MOTION
TO COMPEL ARBITRATION AND DENYING
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 1

1   the Lancorp Financial Fund Business Trust (the "Lancorp Fund").  Lancaster formed the

2   Lancorp Fund in March 2003.  Under the terms of the Private Placement Memorandum, 50,000

3   Investor Shares were to be sold to no more than 100 investors at $5,000 per share.  See

4   Plaintiff's Motion for Preliminary Injunction, Ex. D at i.  Defendant initially invested $50,000 in

5   the Lancorp Fund and executed his original Subscription Agreement with the Lancorp Fund on

6   May 9, 2003.  See Plaintiff's Motion for Preliminary Injunction, Ex. G.  Though the

7   Subscription Agreement stated that defendant's $50,000 contribution was "irrevocable," it also

8   stated that the check would be held in escrow and returned to defendant if "the Shares are not

9   subscribed for and accepted by the Trust pursuant to the terms and conditions specified in the

10  Confidential Agreement."  Id.  On December 14, 2003, for reasons unexplained to the Court,

11  defendant requested a return of his initial investment, plus interest.  See Declaration of Joel A.

12  Goodman in Support of Defendant's Motions (Dkt. #14) ("Goodman Decl"), Ex. 1.  Soon after

13  his request, defendant received a check for $50,197.50 from the Lancorp Financial Group.  Id.

14      Defendant re-established his investment in the Lancorp Fund after Lancaster sent a letter

15  to investors on April 5, 2004 notifying them that the planned insurance element of the Lancorp

16  Fund would be replaced with a "validated written obligation from the 'Qualified Bank' acting as

17  a custodian," and that the Fund was to "go 'effective'"in the "coming days."  Id., Ex. 2.  The

18  letter asked investors to indicate whether they would like to proceed as a subscriber or to

19  withdraw their subscription.  Id.  On April 12, 2004 defendant indicated in writing that he

20  acknowledged the modifications to the plan and that he wished to reconfirm his participation.

21  He provided the Lancorp Fund with a check for his new investment of $100,000 on the same

22  day.  Id., Exs. 2-3.

23      Just a few weeks prior, on March 23, 2004, Lancaster became a registered representative

24  with plaintiff ONESCO.  He continued to act as a registered representative until January 3,

25  2005, when he was terminated by plaintiff.  In March 2007 defendant filed his claim against

26  plaintiff with NASD.  Plaintiff, in turn, filed suit in this Court seeking a preliminary and

27
    ORDER GRANTING DEFENDANT'S MOTION
    TO COMPEL ARBITRATION AND DENYING
28  PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 2

1  permanent injunction to enjoin defendant from taking any further action regarding his arbitration

2  with NASD.  Additionally, plaintiff filed a motion to consolidate the preliminary injunction

3  hearing with a trial on the merits.  Plaintiff argues that trial is required to resolve numerous

4  issues of fact that bear on the question of arbitrability.  Defendant, on the other hand, seeks to

5  compel plaintiff to arbitrate without an evidentiary hearing or trial.

6  ### III.   DISCUSSION

7  As a threshold matter, the Court first addresses defendant's motion to compel arbitration.

8  Though the Supreme Court has stated that "arbitration is a matter of contract and a party cannot

9  be required to submit to arbitration any dispute which he has not agreed so to submit," United

10  Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960), it has

11  also "long recognized and enforced a 'liberal federal policy favoring arbitration agreements.'"

12  Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (quoting Moses H. Cone Mem'l

13  Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)).  The first question for the Court to

14  address, therefore, is the "question of arbirability," i.e., "whether the parties are bound by a

15  given arbitration clause."  Howsam, 537 U.S. at 84.  If that question is answered in the

16  affirmative, the primary task of a court presented with a motion to compel arbitration is to

17  determine whether the arbitration clause at issue applies to the particular type of controversy

18  before it.  See id.  If a district court determines that the parties to a lawsuit have entered into a

19  binding arbitration agreement that covers the dispute at issue in the lawsuit, it shall "direct[ ] the

20  parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.

21  "[T]he [Federal Arbitration] Act leaves no place for the exercise of discretion by a district court,

22  but instead mandates that district courts shall direct the parties to proceed to arbitration on issues

23  as to which an arbitration agreement has been signed."  Dean Witter Reynolds Inc. v. Byrd, 470

24  U.S. 213, 218 (1985).

25  Plaintiff makes two primary arguments in an attempt to defeat defendant's motion to

26  compel arbitration: (1) that there is no agreement to arbitrate disputes between the parties and

27
28  ORDER GRANTING DEFENDANT'S MOTION
TO COMPEL ARBITRATION AND DENYING
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 3

1   (2) that even if there was such an agreement, the current dispute does not fall within its scope.

2   The Court disagrees with both contentions.

3       Even where two parties have no explicit written agreement to arbitrate, NASD Rules

4   10101 and 10301(a) can bind NASD-members to arbitrate certain claims with third parties.  See

5   MONY Secs. Corp. v. Bornstein, 390 F.3d 1340, 1342 (11th Cir. 2004); Washington Square

6   Secs. Inc. v. Aune, 385 F.3d 432, 435 (4th Cir.2004); Vestax Secs. Corp. v. McWood, 280 F.3d

7   1078, 1081 (6th Cir. 2002); World Group Securities, Inc. v. Sanders, 2006 WL 1278738 (D.

8   Utah May 8, 2006).  Two requirements must be met to trigger the NASD's arbitration

9   requirement: "First, the claim must involve a dispute between either an NASD-member and a

10  customer or an associated person and a customer.  Second, the dispute must arise in connection

11  with the activities of the member or in connection with the business activities of the associated

12  person."  USAllianz Secs., Inc. v. Southern Michigan Bancorp, Inc., 290 F. Supp.2d 827, 830

13  (W.D. Mich. 2003) (citations omitted).

14      Plaintiff does not dispute that it is a NASD member.  Nor does plaintiff dispute that

15  Lancaster was a registered representative with ONESCO from March 23, 2004 to January 3,

16  2005.  The primary source of the disagreement between the parties is whether defendant was a

17  "customer" of ONESCO at the time defendant's claim arose.  Plaintiff contends that defendant

18  was never a "customer" of ONESCO, and that even if he was at some point, defendant's claims

19  are based primarily on alleged material representations and omissions made by Lancaster before

20  he was an associated person.  Defendant argues that his transaction with Lancaster did not

21  become complete until after Lancaster became a registered representative of ONESCO, and that

22  he was therefore a "customer" under the NASD rules.  He further argues that his failure to

23  supervise claim against ONESCO is arbitrable regardless of when his initial transaction with

24  Lancaster occurred.

25      The Central District of California recently confronted almost identical issues in a case

26  involving plaintiff and a defendant who had purchased shares in the Lancorp Fund during the

27  ORDER GRANTING DEFENDANT'S MOTION
    TO COMPEL ARBITRATION AND DENYING
28  PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 4

same time period as the defendant in this case.  See <u>O.N. Equity Sales Co. v. Steinke</u>, 2007 WL 2421761 (C.D. Cal. Aug. 27, 2007 ).  The court there granted defendants' motion to compel arbitration after concluding that the NASD rules created an "arbitration" agreement and that the dispute between the parties involving the Lancorp Fund fell within the scope of that agreement. <u>Id.</u> at *3-4.  In reaching this conclusion, the court relied on two observations.  First, that defendants' failure to supervise claim arose in connection with the business of ONESCO for the purposes of Rule 10301(a), and second, that the actual investment using defendants' funds was not made until two months after Lancaster became a registered agent of ONESCO.  <u>Id.</u> at *3.  This case involves a nearly identical facts, and the Court concurs with the <u>Steinke</u> court's reasoning and conclusions.

As was the case in <u>Steinke</u>, defendant here has made claim against plaintiff for its failure to supervise Lancaster in the months after he first became a registered representative of ONESCO on March 23, 2004.  During this time period, defendant was a "customer" of ONESCO under the NASD Rules.  See <u>Multi-Financial Secs. Corp. v. King</u>, 386 F.3d 1364, 1368 (11th Cir. 2004) ("When an investor deals with a member's agent or representative, the investor deals with the member.").  This, on its own, serves as a basis to compel ONESCO to arbitrate defendant's claim.  <u>Id.</u> at 1371.  As other courts have found, the Court here finds that this claim "arises in connection with the business" of ONESCO for the purposes of Rule 10301(a) and is therefore arbitrable.  <u>Steinke</u>, 2007 WL 2421761 at *3; <u>see also</u> <u>World Group Secs</u>, 2006 WL 1278738, at *5; <u>USAllianz Secs., Inc.</u>, 290 F. Supp.2d at 831.

Plaintiff cites extensively to <u>Hornor, Townsend & Kent, Inc. v. Hamilton</u>, 2004 WL 2284503 (N.D. Ga. Sep. 30, 2004), <u>Gruntal & Co., Inc. v. Steinberg</u>, 854 F. Supp. 324 (D.N.J. 1994), and <u>Wheat, First Securities, Inc. v. Green</u>, 993 F.2d 814 (11th Cir. 1993) in support of its contention that defendant's claims are not arbitrable.  These cases, however, involved allegations of wrongdoing that all arose before a NASD member became affiliated with allegedly fraudulent individual or institution.  See <u>World Group Secs</u>, 2006 WL 1278738, at *6.

1    In that context, the quotations from those cases cited by plaintiff carry force.  In such a situation,

2    it may very well be true that "[i]t is elementary that an NASD member 'could not have

3    supervised [the associated person] at a time before [the associated person] became employed

4    with' the NASD member."  Plaintiff's Motion for Preliminary Injunction at p. 21 (quoting

5    <u>Hornor, Townsend & Kent, Inc. v. Hamilton</u>, Case No. 1:01-cv-02979 (N.D. Ga. Sep. 6,

6    2005)).[2]  But here, defendant's allegations include negligent supervision claims that arose *after*

7    Lancaster became affiliated with ONESCO on March 23, 2004.  <u>See</u> <u>World Group Secs</u>, 2006

8    WL 1278738, at *6 (distinguishing <u>Wheat, First</u> and <u>Gruntal</u> in a similar situation).  Thus, this is

9    not a case where the activity at issue pre-dated the involvement of the NASD member.  In this

10   situation, plaintiff's supervision of Lancaster lies at the heart of defendant's NASD claims.

11          Further strengthening the Court's conclusion that the current dispute is arbitrable is the

12   fact that the actual investment of defendant's money was not made until two months after

13   Lancaster became a registered representative of ONESCO.  Though plaintiff puts a great deal of

14   effort into focusing the Court's attention on the May 9, 2003 transaction between Lancaster and

15   defendant, it is undisputed that defendant successfully sought the return of his full $50,000

16   original investment related to that transaction, plus interest, in December 2003.  <u>See</u> Goodman

17   Decl., Ex. 2.  Up until that time, any of defendant's money in Lancorp's possession was held in

18   an escrow account and the Subscription Agreements could be cancelled at any time by Lancorp

19   Fund prior to closing.  It was not until April 12, 2004 that defendant delivered to Lancaster a

20   check for the $100,000 that is at issue in defendant's complaint.  <u>Id.</u>, Exs. 2-3.  Shortly after, the

21   Lancorp Fund became effective.  This transaction occurred after Lancaster became a registered

22   representative of ONESCO in March 2004.  These facts are not in dispute.  As such, the Court

23

24          [2] Plaintiff also quotes the <u>Wheat, First</u> court's commentary on the same issue: "we cannot imagine

25   that any NASD member would have contemplated that its NASD membership would require it to
     arbitrate claims . . . merely because the claimant subsequently became its customer."  <u>Wheat, First</u>, 993

26   F.2d at 820.

27
28

1   concludes that defendant's NASD claims arose during the time he was a "customer" of

2   ONESCO under Rule 10301(a).[3]   See Steinke, 2007 WL 2421761 at *3.  For this reason and

3   those discussed above, the Court grants defendant's motion to compel plaintiff to arbitrate those

4   claims relating to defendant's investment in the Lancorp Fund in April 2004, after Lancaster

5   became a representative of ONESCO.

## IV.  CONCLUSION

7        For all the foregoing reasons, defendant's motion to compel arbitration (Dkt. #16) is

8   GRANTED.  Plaintiff's motions for preliminary injunction ("Dkt. #11) and to "Consolidate

9   Preliminary Injunction Hearing with Trial on the Merits" (Dkt. #10) and defendant's motion for

10  a protective order (Dkt. #15) are all DENIED as moot.

12        DATED this 17th day of September, 2007.

Robert S. Lasnik
United States District Judge

---

20        [3] Plaintiff attempts to argue that defendant's delivery of the $100,000 to Lancaster is simply
    "post-execution" activity that is irrelevant to the question of arbitrability, and that the Court should
    instead look to the "operative facts" relating to the May 9, 2003.  This position is not supported by
22  plaintiff's own cases.  Plaintiff itself quotes Hornor for the proposition that it is the "sale" of the security
    that is the critical event in determining arbitrability.  See Plaintiff's Motion for Preliminary Injunction at p.
23  20.  Indeed, what the Hornor court held was that a "sale" that "occurred at a time when [the member's
    representative] was not employed [by the member], the latter cannot be hauled into an arbitration
24  proceeding convened to adjudicate the [defendants'] complaint about the propriety of the sale."
    Similarly, in Wheat, First, the court looked to whether the defendant was a customer of plaintiff "at the
25  time of the allegedly fraudulent stock transactions."  993 F.2d at 820.  In this instance, the "sale" at issue
    occurred at a time when Lancaster was a representative of plaintiff.

ORDER GRANTING DEFENDANT'S MOTION
TO COMPEL ARBITRATION AND DENYING
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 7